UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-23128-CIV-GOLD/MCALILEY

PRESTIGE RESTAURANTS AND
ENTERTAINMENT, INC.

    Plaintiff.

v.

BAYSIDE SEAFOOD RESTAURANT,
INC., *et al.*

    Defendants.

_____/

**ORDER GRANTING MOTIONS [DE 2]; [DE 9] IN
PART; DISMISSING FEDERAL CLAIMS WITH PREJUDICE;
DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE; CLOSING CASE**

    **I.**    **Introduction**

THIS CAUSE is before the Court upon two Motions to Dismiss Plaintiff's Amended Complaint **[DE 2]**; **[DE 9]**.  The first motion was filed by Defendants City of Miami, Officer Marta Cabana ("Cabana"), and Commander Lorenzo Whitehead ("Whitehead") (collectively, "the City Defendants").  *See* **[DE 2]**.  The second was filed Defendants Bayside Seafood Restaurant, Inc. ("BSR"), Blue Green Bay Corporation ("Blue-Green"), Armando LaCasa ("A. Lacasa") and Carlos LaCasa ("C. Lacasa") (collectively "the Bayside Defendants").  Plaintiff Prestige Restaurants and Entertainment, Inc. ("Prestige" or "Plaintiff") filed responses in opposition to both motions **[DE 13]**; **[DE 15]**, and the City Defendants filed a reply to Plaintiff's response.  *See* **[DE 22]**.  Having carefully considered the relevant submissions, the applicable law, and the oral arguments of the parties as presented to this Court on Friday February 5, 2010, I dismiss Plaintiff's federal claims with prejudice for the reasons that follow.  Because Plaintiff has failed to state a claim over

which I have original jurisdiction,[1] I also dismiss Plaintiff's state law claims, though these claims are dismissed without prejudice to Plaintiff's ability pursue them in state court. *See* 28 U.S.C. § 1367(c)(3).

## II.     Background[2]

Plaintiff Prestige is a Florida corporation that organizes and promotes events with Caribbean musical and cultural themes. **[DE 1 at p. 7]**. Defendant BSR is a Florida corporation that occupies and oversees a combination restaurant-nightclub establishment ("the Bayside Hut") in Key Biscayne, Florida pursuant to a Revocable Permit provided by the City of Miami, the owner of the property on which the Bayside Hut is located. **[Id. at pp. 7-8]**. Armando and Carlos Lacasa are Miami-Dade County residents and the shareholders of Defendant Blue-Green, a Florida corporation that operates the restaurant portion of the Bayside Hut. **[Id.]**.

The nightclub portion of the Bayside Hut, on the other hand, has been operated by Plaintiff Prestige since July 2008 pursuant to a series of agreements ("the nightclub agreements") it entered into with non-party Bayside Management of Key Biscayne ("BMK"), whereby BMK assigned to Prestige its right to operate the nightclub portion of the Bayside Hut. **[Id. at pp. 8-9]**. Specifically, Prestige was assigned certain rights provided by a

---

[1] The parties conceded at oral argument that the federal questions raises by Plaintiff's federal claims are the only basis for this Court's exercise of subject-matter jurisdiction.

[2] For purposes of a motion to dismiss, I take as true all factual allegations in Plaintiff's Amended Complaint and the exhibits attached thereto. *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). To the extent there is a conflict between the allegations in the Amended Complaint and the exhibits, the exhibits control. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quotations omitted).

Management Agreement originally entered into between BMK and BSR ("the Management Agreement"), giving Prestige the right to "operate the [nightclub] fifty-two (52) weeks per year, seven (7) days per week, from 11:00 p.m. to 8:00 a.m.," with certain restrictions that are immaterial for the purposes of this Order.  **[*Id.* at p. 37]**.  The Management Agreement provides that it is terminable (a) "without cause"; or (b) with cause "with ten (10) days prior written notice" in the event of certain uncured (or uncurable) material breaches.  **[*Id.* at pp. 39-40]**.  Pursuant to the nightclub agreements, Prestige became the exclusive manager and operator of the nightclub.  **[*Id.*]**.

In accordance with the nightclub agreements, Prestige "promoted and managed the [nightclub] for BMK without incident until October 2008."  **[*Id.* at p. 10]**.  Starting in October 2008, however, Defendant Blue-Green began to make renovations to the restaurant portion of the Bayside Hut, which allegedly interfered with the main bar located in the nightclub area.  **[*Id.*]**.  As a result of these renovations, Prestige lost profits and revenue from decreased patronage and liquor sales.  **[*Id.* at p. 11]**.  In November 2008, the relationships between BSR, Blue-Green, and Prestige "continued to degrade" and the tensions between the parties escalated.  **[*Id.*]**.  According to Plaintiff, Defendant Armando LaCasa would continuously refer to Prestige's patrons as "those type of people" and to the music Prestige played as "that type of music."  **[*Id.* at pp. 11, 12]**.

Though tensions remained high, Prestige continued its event operations at the nightclub without incident until March 10, 2009, when it received a letter from BSR declaring Prestige in breach of contract and revoking Prestige's authority to operate parties at the nightclub.  **[*Id.* at p. 83]**.  In response, Prestige sent BSR a letter on March 18, 2009

"den[ying] that BSR had a right to terminate the contract" and asserting that "because [Prestige] was not in breach of contract, it would continue to hold its events on the Premises and that any cease and desist order to the contrary must be issued by a court." **[*Id.* at p. 13]**.

In accordance with its expressed written intent to continue holding events at the Bayside Hut, Prestige scheduled an event for April 25, 2009, for which it sold approximately $25,000 in advance tickets. **[*Id.* at p. 14]**. When Prestige went to set-up for the event, its representatives were met at the entrance by the Lacasas, Officer Carbana, and several guards, all of whom blocked Prestige's entrance to the premises. **[*Id.*]**. The Lacasas told Officer Carbana that they were entitled to possession of the premises and that Prestige was trespassing, at which point Officer Carbana reviewed documents presented to her by the Lacasas. **[*Id.* at 14, 15]**. When Prestige's representatives requested that Officer Carbana allow them to explain Prestige's position, Officer Carbana refused and proceeded made a telephone call to her supervisor, Commander Whitehead, to discuss the situation. **[*Id.* at 15]**. After speaking with Commander Whitehead, who discussed the matter with the City attorneys, Officer Carbana reported that the only names appearing in the City's records were the Lacasas', and that she had been ordered to remove Prestige from the premises. **[*Id.*]**. Accordingly, Prestige was forced to cancel the event. **[*Id.*]**.

In addition to constituting a contractual breach, Prestige claims that the events of April 25, 2009 were "planned . . . calculated" and motivated by racial animus. **[*Id.* at p.16]**. Although Plaintiff alleges no direct nexus between the City Defendants and A. Lacasa's

4

allegedly discriminatory remarks, it maintains that "Blue-Green, the Lacasas, Officer Carbana, Commander Whitehead, and [] the City, acting under color of state law . . . conspired to cause and did cause Prestige to be illegally deprived of its right of possession of the Premises and its chattels" and "unlawfully discriminat[ed] against Prestige in derogation [sic] of its civil rights" by preventing Plaintiff from entering the Bayside Hut on the evening in question.  **[*Id.* at 15-16]**.

As a result of these allegedly unlawful acts, Prestige filed a complaint in Miami-Dade County Circuit Court – which was subsequently amended – asserting numerous state and federal claims against Defendants.  **[*Id.* at pp. 1-31]**.  Counts one through six of Plaintiff's Amended Complaint assert state law claims for declaratory relief, breach of the nightclub agreements, tortious interference with contractual relations, wrongful eviction, trespass, and tortious conversion; counts seven through twelve are federal claims asserting violations of 42 U.S.C. § § 1983, 1981, 1982, 1985, and 1986.  **[*Id.*]**.  After the City Defendants removed this matter to federal court, *see* **[DE 1]**, the Bayside Defendants and the City Defendants filed the instant motions to dismiss.

### III.     Standard of Review

For the purposes of a motion to dismiss, my review is "limited to the four corners of the complaint" and any documents referred to in the complaint which are central to the claim.  *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  Thus, for the purposes of deciding Defendant's motion, only the contents of Plaintiff's Amended Complaint and the attached exhibits will be considered.  *Brooks v. Blue Cross & Blue Shield of Florida*, 116 F.3d 1364, 1369 (11th Cir. 1997).

In determining whether to grant a motion to dismiss, I must accept all the factual allegations in the complaint as true and evaluate all inferences derived from those facts in the light most favorable to the Plaintiff.  *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)*; Hoffend v. Villa*, 261 F.3d 1148, 1150 (11th Cir. 2001).   "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1959 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957)).  "Of course, 'a formulaic recitation of the elements of a cause of action will not do.'" *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) *(*quoting *Twombly*, 550 U.S. at 555).  "While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because it strikes a savvy judge that actual proof of those facts is improbable, the factual allegations must be enough to raise a right to relief above the speculative level." *Watts*, 495 F.3d at 1295 (citing *Twombly*, 550 U.S. at 555) (internal quotations omitted)). In other words, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n] ' – 'that the pleader is entitled to relief.' " *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

Moreover, the pleading requirements are different for certain matters, such as claims founded upon the existence of a conspiracy.  "[T]he Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged," *Griswold v. Alabama Dep't. of Indus. Relations*, 903 F.Supp. 1492, 1500-1501 (M.D. Ala.1995) (citations omitted), and "conclusory, vague, and general allegations of conspiracy may justify dismissal of a complaint" dependant upon the existence of a conspiracy.  *Kearson v. Southern Bell Tel. & Tel. Co.*, 763 F.2d 405, 407 (11th Cir. 1985).  To satisfy the heightened pleading standard for conspiracy claims, " '[t]he plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants.' "  *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890-91 (11th Cir. 2007) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002)).  Thus, a Plaintiff's conclusory allegation that police officers "agreed among themselves and with other individuals to act in concert in order to deprive [Plaintiff] of his clearly established Fourth and Fourteenth Amendment rights . . . is simply insufficient to satisfy Plaintiff's burden." *Diaz-Martinez v. Miami-Dade County*, 2009 WL 2970468 *1, *9 (S.D. Fla. Sept. 10, 2009).  The remedy for a failure to plead with sufficient particularity is dismissal with or without prejudice, depending on the circumstances.  *Id.* at 1362 (affirming district court's dismissal of claim with prejudice for failing to plead fraud with sufficient particularity).

**IV.     Analysis**

*A.     The Nature of Plaintiff's Rights Under the Management Agreement*

In Order to address whether Plaintiff has stated a federal claim, I first address a threshold question regarding the nature of Plaintiff's rights vis-a-vis the property in question.  In support of its assertion that it had a "possessory interest" of which it was wrongfully deprived, Plaintiff contends that the "Management Agreement," though not labeled as a lease, created a leasehold interest which Plaintiff took by assignment, and not a mere license to operate a nightclub at the Bayside Hut.  *See* **[DE 1 at p. 19]**.  "[T]he intention of the parties concerning whether a contract is a lease or a license is determined by an 'objective interpretation' of the writings and surrounding circumstances" and is a "a question of law," just like the interpretation of any other contract.  *Delauter v. Shafer*, 822 A.2d 423, 427 (2003); *Three Keys, Ltd. v. Kennedy Funding, Inc.*, 2009 WL 3877900, *8 (Fla. 5th DCA 2009).  "To determine the parties' intent, 'a court should consider the language in the contract, the subject matter of the contract, and the object and purpose of the contract.' " *Huntington on the Green Condo. v. Lemon Tree I-Condo.*, 874 So. 2d 1, 4 (Fla. 5th DCA 2004).

Under Florida law,[3] the distinction between a lease and a license is as follows:

> A tenant under a lease is one who has been given a possession of land which is exclusive even of the landlord except as the lease permits his entry, and saving always the landlord's right to enter to demand rent or to make

---

[3] In determining and applying the law of Florida for the limited purpose of analyzing the nature of Plaintiff's interest for purposes of this Order, I "must follow the decisions of the state's highest court, and in the absence of such decisions on an issue, must adhere to the decisions of the state's intermediate appellate courts unless there is some persuasive indication that the state's highest court would decide the issue otherwise."  *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982) (citations omitted).

> repairs. A licensee is one who has a mere permission to use land, dominion over it remaining in the owner and no interest in or exclusive possession of it being given to the occupant; [thus,] a license does not confer an interest in the land but merely gives the licensee the authority to do a particular act on another's land.

*Turner v. Florida State Fair Authority*, 974 So. 2d 470, 473-74 (Fla. 2d DCA 2008) (cites and quotes omitted). Having carefully reviewed the Management Agreement in question, I reject the suggestion that the Management Agreement somehow conferred upon Plaintiff a possessory interest in the premises, and not a license. *See Dupont v. Whiteside*, 721 So. 2d 1259, 1263 (Fla. 5th DCA 1998) ("A license, however, confers no interest in the land but merely gives one the authority to do a particular act on another's land."). I reach this conclusion because the plain language of the contract does not create a right of "exclusive" possession; rather, it simply provides that "Management may operate the supper club" during certain periods of time. **[DE 1 at p. 37]**. This language reflects a grant of "authority to do a particular act on another's land" (i.e., operate the supper club), and not a right of exclusive possession or occupancy. *Turner,* 974 So. 2d at 473-74. Accordingly, the Management Agreement rights Plaintiff acquired from BMK constituted a license that was revocable with or without cause in accordance with the terms of the agreement. *See* **[DE 31 at pp. 39-40]**.

    B.    *Counts Seven and Eight - Section 1983*

Counts seven and eight of Plaintiff's Amended Complaint assert that Defendants Carbana, Whitehead, City of Miami, Blue-Green, A. Lacasa, and C. Lacasa deprived Prestige of certain constitutionally protected rights while acting under color of state law in violation of 42 U.S.C. § 1983. *See* **[DE 1 at p. 27]**. The two constitutionally-protected

interests at issue in counts seven and eight are: (1) Plaintiff's alleged "entitlement to possession of the Premises"; and (2) Plaintiff's interest the "personal property located on the premises." **[Id.]**   Plaintiff alleges that these deprivations constitute violations of both the Fourth and Fourteenth Amendments.

Having carefully considered the contents of the Amended Complaint and the relevant exhibits, it is clear that claimant has failed to adequately allege a constitutional violation sufficient to state a Section 1983 claim.  "In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a person acting under color of state law; (2) deprived him of a right secured by the Constitution."  *Hernandez v. Fla. Dept. of Corrections*, 281 Fed. Appx. 862 (11th Cir. 2008) (citing 42 U.S.C. § 1983).  Having carefully reviewed the Amended Complaint and the applicable law, I conclude that counts seven and eight fail to satisfy the second essential element of a Section 1983 claim.[4]

Even if Plaintiff were able to identify a constitutionally protected property interest of which it was deprived – which it has not – Plaintiff's conclusory allegations that Defendants' actions constituted a procedural due process violation are flatly contradicted by well-settled case law and the contents of Plaintiff's Amended Complaint and the pertinent exhibits.  As the Eleventh Circuit has repeatedly noted, "'procedural due process[5] imposes constraints

---

[4]Because Plaintiff has failed to adequately allege a constitutional violation, I do not reach the questions of state action and qualified immunity. *Hilton v. Secretary for Dept. of Corrections*, 170 Fed.Appx. 600, 604 n.4 (11th Cir. 2005) (noting that where plaintiff has failed to state a claim, there is no need to reach questions of qualified immunity) (citation omitted); *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994) ("recogniz[ing] the serious state action questions raised by Plaintiff's suit [but declining to] . . . address or decide the issue" given absence of a constitutional violation).

[5]The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Collins v. City of Harker Heights*, 503 U.S. 115, 125, 112 S. Ct. 1061 (1992).

on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process clause of the Fifth or Fourteenth Amendment." *Grayson v. King*, 460 F.3d 1328, 1340 (11th Cir. 2006). While these constraints generally require a hearing prior to the deprivation in question, it is well-settled that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the 14th Amendment if a meaningful post-deprivation remedy for the loss is available." *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996). This principle of due process jurisprudence does not focus on "the actual involvement of state courts or whether they were asked to provide a remedy in the specific case now before the federal court," but rather

> "looks to the existence of an opportunity – to whether the state courts, if asked, generally would provide an adequate remedy for the procedural deprivation the federal court plaintiff claims to have suffered. If state courts would, then there is no federal procedural due process violation regardless of whether the plaintiff has taken advantage of the state remedy or attempted to do so."

*Id.* Here, Plaintiff has not alleged a lack of a meaningful post-deprivation remedy, nor could it have, for there are a number of post-deprivation remedies available to it under Florida law (many of which Plaintiff invokes in its Amended Complaint). Accordingly, Plaintiff has failed to adequately allege a procedural due process violation and count seven must be dismissed. *See Tinney*, 77 F.3d at 382 (11th Cir. 1996) (holding that Section

---

Substantive due process applies to "those rights that are 'fundamental' – rights that are 'implicit in the concept of ordered liberty,' " such as the right to be free from state-sponsored torture. *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir.1995) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325-26, 58 S. Ct. 149 (1937) (noting that the Due Process Clause must at least "give protection against torture, physical or mental.")). Plaintiff's allegations focus on principles of procedural due process.

1983 Plaintiffs who sued sheriff for actions taken in connection with eviction "failed to state a valid procedural due process claim because they [had] not alleged that Alabama law provided them with an inadequate post-deprivation remedy.").

Count eight also fails to state a Section 1983 claim, for Plaintiff has not adequately alleged a seizure[6] in violation of the Fourth Amendment.  The United States Supreme Court has explained that "a seizure of property . . . occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct 538 (1992) (citation omitted) (finding seizure where deputy sheriffs helped owner and manager of mobile home park dispossess owners of their mobile home by physically tearing it from foundation and towing it to another lot). Thus, where a Plaintiff has no possessory interest in the property at issue, there can be no seizure for purposes of the Fourth Amendment. *U.S. v. Demoss*, 279 F.3d 632 (8th Cir. 2002) (noting that party's only possessory interest in a package was timely delivery, and until the officer's actions impinged upon that interest, there was no seizure.)  Here, despite its conclusory allegations to the contrary, Plaintiff Prestige had no right to enter the Bayside Hut on April 25, 2009, because the Management Agreement – on which Prestige relies entirely to establish its alleged "right of possession" – was unequivocally terminated more than a month earlier, on March 10, 2009.[7]  *Cf. Dixon v. Lowery*, 302 F.3d 857 (8th Cir.

---

[6] While the Fourth Amendment encompasses both searches and seizures, Plaintiff does not claim to have been subjected to an unlawful search.

[7] Although the question of whether the termination of the Management Agreement was with or without cause may very well be relevant for purposes determining Plaintiff's right to avail itself of the "without cause" remedies provided for by the Management Agreement, *see* **[DE 1 at p. 39]**, this does not change the fact that the Management Agreement was terminated on March 10, 2009, either with or without cause, and that Prestige was therefore without any right

2002) (concluding that plaintiff had property interest in premises for purposes of establishing Fourth Amendment seizure where circumstances indicated that Plaintiff's leasehold interest was "arguable, if disputed," and emphasizing that "what is important is that [Plaintiff] had a property interest that was clearly in dispute."). Accordingly, Plaintiff has not sufficiently pled a meaningful interference with a possessory interest for purposes of the Fourth Amendment. To the extent Plaintiff asserts that it was unconstitutionally deprived of its interest in personal property kept at the Bayside Hut, it has failed to allege facts demonstrating that Defendants intentionally or willfully acquired physical control of said property. *See Shaarbay v. Palm Beach County Jail*, 2009 WL 3401423, *1, *3 (11th Cir. Oct. 23, 2009) ("a Fourth Amendment violation requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful.") (cites and quotes omitted). Because Plaintiff has not adequately pled a Fourth Amendment violation sufficient to state a Section 1983 claim, count eight fails as a matter of law.

    *C.    Counts Nine and Ten - Sections 1981 and 1982*

In order to state a claim of race discrimination under 42 U.S.C. § 1981, a Plaintiff must adequately allege facts supporting the following elements: "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004). The activities enumerated in the statute are the right to make and enforce contracts, to

---

to enter the premises without permission at the time of the April 25, 2009 incident.

sue, and to give evidence. *Id.*

Section 1982 is similar to Section 1981, "except that it focuse[s], not upon rights to make and enforce contracts, but rights related to the ownership in property." *CBOCS W., Inc. v. Humphries*, ---U.S. ----, 128 S.Ct. 1951, 1955 (2008). Section 1982 states, in pertinent part, that "[a]ll citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof to . . . purchase, lease, [and] sell . . . real . . . property." 42 U.S.C. § 1982. The elements of a Section 1982 claim "parallel" those required to state a Section 1981 claim – i.e., a plaintiff must adequately allege the same first two elements, as well as "interference with the rights or benefits connected with the ownership of property." *Daniels v. Dillard's, Inc.*, 373 F.3d 885, 887 (8th Cir. 2004); *CBOCS W., Inc.*, 128 S.Ct. at 1956 (noting that Supreme Court precedents "have long construed § § 1981 and 1982 similarly" and that the only difference in the statutes' language is the set of rights protected); *see, e.g., Lawrence v. Courtyards at Deerwood Assoc.*, 318 F. Supp. 2d 1133, 1150 (S.D. Fla. 2004) (setting forth elements of Section 1982 claim).

Thus, in order to state a claim under either Section 1981 or Section 1982, Plaintiff must adequately allege that it is a member of a racial minority. Plaintiff Prestige, "a corporation . . . with no racial identity," has failed to do so. *Arlington Heights v. Metropolitan Housing Development Corp.,* 429 U.S. 252, 263, 97 S.Ct. 555 (1977). As the Supreme Court noted in *Arlington Heights*, "corporations . . . ha[ve] no corporate identity and cannot be the direct target of . . . alleged discrimination."[8] *Id.* While I recognize that

---

[8]While I recognize that this conclusion was not essential to the Supreme Court's holding in *Arlington Heights* because of the presence of an individual plaintiff, the Eleventh Circuit has repeatedly emphasized that "dicta from the Supreme Court is not something to be lightly cast aside." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1392 n. 4 (11th Cir. 1997); *United States*

14

corporations have been permitted to bring Section 1983 claims as a result of discriminatory state actions directed at third parties, *see e.g., Young Apartments, Inc. v. Town of Jupiter, Fl.,* 529 F. 3d 1027 (11th Cir. 2008), Section 1983 – unlike Sections 1981 and 1982 – does not require that a Plaintiff be "a member of a racial minority" to state a cause of action; such cases are therefore inapposite. Because Prestige has not adequately alleged that it "is a member of a racial minority,"[9] its intentional discrimination claims fail as a matter of law. *See Anderson v. Greene*, 2005 WL 2233470, *1 (S.D. Ala. 2005) (noting that "Court dismissed plaintiff's claim under 42 U.S.C. § 1981 given the Amended Complaint's failure to suggest, much less reasonably plead facts, that [Plaintiff] belongs to a racial minority or that defendants intentionally discriminated against him on the basis of race.")

    D.    *Counts Eleven and Twelve – Sections 1985(3) and 1986*

Counts eleven and twelve of Plaintiff's Amended Complaint assert claims pursuant to 42 U.S.C. §§ 1985 and 1986 for conspiracy to violate civil rights, and neglect to prevent conspiracy to violate civil rights. **[DE 1 at pp. 30-31]**. To state a claim under § 1985(3), a

---

*v. Becton*, 632 F.2d 1294, 1296 n. 3 (5th Cir.1980) ("We are not bound by dicta, even of our own court . . . Dicta of the Supreme Court are, of course, another matter.") (citation omitted); *see United States v. City of Hialeah*, 140 F.3d 968, 974 (11th Cir. 1998) ("Even though that statement by the Supreme Court . . . was dictum, it is of considerable persuasive value, especially because it interprets the Court's own precedent.").

    [9] I acknowledge that a limited number of courts have disregarded the corporate racial identity rule of *Arlington Heights* in exceptional situations, concluding that it is possible for a corporation to acquire a racial identity through minority ownership or management. *See e.g., Ultimax Transp., Inc. v. British Airways*, Inc., 231 F. Supp. 2d 1329, 1338 (N.D. Ga. 2002) (noting that "discerning the racial identity of a corporation [can] be quite daunting in many circumstances" but permitting 1981 claim to proceed where Plaintiff adequately demonstrated that discrimination was directed at African-American owner and employees of corporation). Here, however, Prestige has not asserted that it somehow assumed a racial identity; instead, it simply claims that it was discriminated against because of its patrons' race. **[DE 1 at p. 28]** ("[c]learly, they discriminated *against Prestige because of its patrons' race.*") (emphasis added). Accordingly, I need not reach this issue.

15

Plaintiff must adequately plead the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Park v. City of Atlanta*, 120 F.3d 1157, 1161 (11th Cir. 1997).

As noted above, *see* Section III, *supra*, "the Eleventh Circuit requires a heightened pleading standard in conspiracy cases because a defendant must be informed of the nature of the conspiracy alleged." *Griswold v. Alabama Dep't. of Indus. Relations*, 903 F.Supp. 1492, 1500-1501 (M.D. Ala. 1995) (citations omitted). To satisfy the heightened pleading standard for conspiracy claims, " '[t]he plaintiff does not have to produce a smoking gun to establish the understanding or willful participation required to show a conspiracy, but must show some evidence of agreement between the defendants.' " *Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890-91 (11th Cir. 2007) (quoting *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283-84 (11th Cir. 2002)). Thus, a Plaintiff's conclusory allegation that police officers "agreed among themselves and with other individuals to act in concert in order to deprive [Plaintiff] of his clearly established Fourth and Fourteenth Amendment rights . . . is simply insufficient to satisfy Plaintiff's burden." *Diaz-Martinez v. Miami-Dade County*, 2009 WL 2970468 *1, *9 (S.D. Fla. Sept. 10, 2009).

Here, Plaintiff has fallen woefully short of satisfying the heightened pleading standard applied by the Eleventh Circuit to conspiracy-based claims. Critically, Plaintiff has not provided particularized allegations regarding an agreement entered into by the alleged

16

co-conspirators. Instead, Plaintiff merely asserts that six of the seven named Defendants "conspired to violate Plaintiff's civil rights by entering into an agreement . . . to forcibly evict Prestige from the Premises" without providing even a scintilla of specificity as to the time or place of the agreement, or the assent of the parties thereto.  **[DE 1 at p. 30]**. Conclusory and ambiguous allegations such as these have been roundly rejected as insufficient in the conspiracy context. *Albra*, 232 Fed. Appx at 890-91 (concluding that in order "[t]o allege a conspiracy, a plaintiff must make particularized allegations that are more than vague or conclusory and must show some evidence of agreement between the defendants") (cites and quotes omitted)*; see also Twombly*, 550 U.S. at 564 n. 10 (noting that a defendant seeking to respond to such conclusory allegations of a conspiracy "would have little idea where to begin" because the pleadings "mentioned no specific time, place, or person involved in the alleged conspiracies."). Because Plaintiff has failed to adequately allege a conspiracy,[10] his Section 1985 claim fails as a matter of law.[11] *See Park*, 120 F.3d

---

[10] Alternatively, Plaintiff's Section 1985 fails because Plaintiff has failed to show that Defendants' actions in denying Plaintiff access to the premises "were motivated by racial or class-based invidiously discriminatory animus." *Chen ex rel. V.D. v. Lester,* 2010 WL 339789, *5 (11th Cir. Feb. 1, 2010) (noting that Section 1985 Plaintiff "must show that the defendants were motivated by racial or class-based 'invidiously discriminatory animus' " in order to survive dismissal). To the contrary, the specific facts contained in the exhibits – which control over conflicting general allegations contained in the complaint, *see Crenshaw*, 556 F.3d at 1292 – clearly indicate that the decision to terminate Plaintiff's license to operate the nightclub was motivated by repeated complaints concerning code violations, thefts, destruction of property, and other disruptive activities. *See* **[DE 1 at pp. 83 - 86]**.

[11] Interestingly, the facts indicate that the six conspiring Defendants could not have possibly come to a single agreement, for it is not alleged that Commander Whitehead ever had any contact, either direct or indirect, with three of the six alleged co-conspirators such that an agreement could have been entered into. Additionally, the intracorporate conspiracy doctrine precludes the possibility that there existed six distinct co-conspirators, as Plaintiff alleges, because the City, Commander Whitehead, and Officer Carbana cannot, as a matter of law, conspire with each other absent allegations that Carbana and Whitehead were acting beyond the scope of their employment. *Alba*, 232 Fed. Appx. at 891 (noting that "a corporation cannot

at 1161 (noting that a conspiracy is an essential element of a Section 1985 claim). Additionally, "[b]ecause § 1986 claims are derivative of § 1985 claims, Plaintiff['s] § 1986 claim[] must fail as well." *Chen ex rel. V.D. v. Lester,* 2010 WL 339789, *5 (11th Cir. Feb. 1, 2010); *see also Moody v. City of Albany, Ga.,* 228 Fed. Appx. 859, 861 (11th Cir. 2007) (holding that Section 1986 claim, which asserted a failure to prevent a Section 1985 violation, failed in the absence of a valid Section 1985 claim).

**V.     Conclusion**

Based on the foregoing, I dismiss counts seven, eight, nine, ten, eleven and twelve for failure to state a claim. The dismissal is *with prejudice* for two reasons. First, the facts and circumstances indicate that any attempt to amend Plaintiff's federal claims would be futile; and second, Plaintiff has failed to adequately plead the essential elements of these claims despite having previously amended its complaint. *Novoneuron Inc. v. Addiction Research Institute, Inc.,* 326 Fed. Appx. 505, 507 (11th. Cir. 2009) (affirming dismissal with prejudice where Plaintiff amended as a matter of right and later decided to litigate the merits of Defendant's motion to dismiss rather than requesting leave to amend); *Butler v. Prison Health Services*, Inc., 294 Fed. Appx. 497, 500 (11th Cir. 2008) ("The district court . . . need not allow an amendment . . . where amendment would be futile.") (cites and quotes omitted).

Moreover, because all claims over which I have original jurisdiction have been dismissed, I decline to exercise my supplemental jurisdiction and dismiss Plaintiff's state

---

conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves because a corporation and its employees are considered to be a single legal actor" and that "intracorporate conspiracy doctrine also applies to public, governmental entities") (cites and quotes omitted).

law claims as well.  However, the dismissal of Plaintiff's state law claims is *without prejudice* to Plaintiff's ability to pursue these claims in state court.  See *Crosby v. Paulk*, 187 F.3d 1339, 1352 (11th Cir. 1999) (indicating that when a court declines to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claims in state court).  Simply put, this is essentially a state case, and should be litigated in an appropriate state forum, not federal court.  Accordingly, it is hereby

ORDERED AND ADJUDGED that:

1. Defendants' Motions to Dismiss **[DE 2]**; **[DE 9]** are GRANTED IN PART.

2. Counts seven, eight, nine, ten, eleven, and twelve of Plaintiff's Amended Complaint are DISMISSED WITH PREJUDICE.

3. Counts one, two, three, four, five, and six of Plaintiff's Amended Complaint are DISMISSED WITHOUT PREJUDICE to Plaintiff's ability to pursue these claims in state court.

4. All pending motions are DENIED AS MOOT and all upcoming hearings are CANCELLED.

5. This case is CLOSED

DONE and ORDERED IN CHAMBERS at Miami, Florida this 22nd day of February, 2010.

_____
THE HONORABLE ALAN S. GOLD
UNITED STATES DISTRICT JUDGE

cc: Magistrate Judge McAliley
    Counsel of record